IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.                                              No. 23-cr-1478-WJ

**JOSEPH ERIC SILVA**,

    Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**
**<u>DENYING DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA</u>**

**THIS MATTER** is before the Court on Defendant Joseph Silva's Opposed Motion to Withdraw his Guilty Plea (**Doc. 41**), the United States' Response (**Doc. 43**), and Silva's Reply (**Doc. 46**). Silva contends he is entitled to withdraw his guilty plea because it was not made knowingly and voluntarily. Naturally, the Court held a hearing.[1] Upon review of the transcript of Silva's plea hearing (**Doc. 37**), the parties' written submissions, oral arguments of counsel, and the applicable law, the Court finds Silva has not met his burden. The Motion (**Doc. 41**) is therefore **DENIED**.

### BACKGROUND

Silva pleaded guilty (**Docs. 21 & 37**) to the charge of being a Felon in Possession of a Firearm and Ammunition, as set forth in the Indictment (**Doc. 2**). United States Magistrate Judge John Robbenhaar conducted the plea hearing on January 29, 2024 (**Docs. 20 & 21**). During the change of plea hearing, a plea colloquy—consistent with Rule 11—took place. *See* **Doc. 37 (Plea**

---

[1] On a few occasions, the Court cites to court reporter's unofficial transcript from the hearing as "**Mot. Hrg. Tr.**" This transcript has not been filed on the docket (because it occurred just the other day). Nevertheless, it is important that some quotations from the hearing are captured verbatim.

1

**Hrg. Tr.)**. Specifically, Judge Robbenhaar ensured Silva: (1) was advised of his constitutional[2] rights, (2) understood the nature[3] of the charges, (3) understood the maximum possible penalties,[4] and (4) understood the consequences of his plea.[5]

When asked "how do you plead," Silva responded with "Guilty." **Plea Hrg. Tr. at 17:7–10**. Judge Robbenhaar found Silva was "competent and capable of entering an informed plea" and that the plea was "knowing and voluntary and supported by sufficient facts." *Id.* **at 17:12–15**. Silva's guilty plea was accepted; and he was adjudged guilty. *Id.* **at 17:16–17**.

Now, almost seven months later, Silva wants out—and seeks to withdraw his guilty plea (**Doc. 41**). In support of this request, Silva claims his prior attorney "informed him that he would

---

[2] **Plea Hrg. Tr. at 5:14–6:23**; *see also* Fed. R. Crim. P. 11(b)(1)(A)–(F) & (O).

[3] **Plea Hrg. Tr. at 7:18–8:19**; *see also* Fed. R. Crim. P. 11(b)(1)(G).

[4] **Plea Hrg. Tr. at 6:24–7:17, 8:21–11:11, 18:12–20:5**; *see also* Fed. R. Crim. P. 11(b)(1)(H)–(M).
    The only Rule 11(b) advisement that was not explicitly discussed is (b)(1)(N)—which deals with "the terms of any plea-agreement" waiving certain appellate rights. But that is because there was no plea agreement. Despite that, the Magistrate Judge did ask if there was a plea agreement and if plea discussions took place. *See* **Plea Hrg. Tr. at 12:6–15:14**.

[5] The Court takes this list, in part, from the Eleventh Circuit. In fact, the inclusion of this list is the only reason for this footnote. In the Eleventh Circuit, the efficacy of a Rule 11 colloquy is viewed against "the three 'core objectives' necessary for a knowing and voluntary guilty plea." *United States v. Presendieu*, 880 F.3d 1228, 1238 (11th Cir. 2018) (requiring that the plea colloquy ascertain that Defendant: (1) entered the plea free of coercion, (2) understands the nature of the charges, and (3) understands the consequences of the plea). The First Circuit also adheres to the same "three core Rule 11 concerns." *United States v. Rodriguez-Leon*, 402 F.3d 17, 25 (1st Cir. 2005) (citing *United States v. Isom*, 85 F.3d 831, 835 (1st Cir. 1996)).
    Upon review, it appears there is no similar hierarchy in the Tenth Circuit. Of course, some cases explain the primary purpose of Rule 11 is to ensure a defendant "knows and understands his constitutional" rights. *See United States v. Buonocore*, 416 F.3d 1124, 1139 (10th Cir. 2005). And other cases note that the purpose of Rule 11 is to ensure a court informs the defendant of: (1) the penalties; including any mandatory penalty, and (2) the nature of the charges. *United States v. Carillo*, 860 F.3d 1293, 1301–05 (10th Cir. 2017) (discussing subparagraphs G, H, and I of Rule 11(b)).
    Although Rule 11(b)(1)(A)–(O) lists the particulars of what a court "must inform the defendant of," *see* Fed. R. Crim. P. 11(b)(1), a Rule 11 colloquy need not be perfect. *See United States v. Gigot*, 147 F.3d 1193, 1197–98 (10th Cir. 1998); *see also United States v. Trujillo*, 960 F.3d 1196, 1206–07 (10th Cir. 2020) (noting that "Rule 11 errors . . . are regularly measured and often held harmless"). Obviously, careful compliance with Rule 11 is the best way to ensure a plea is valid; but again, perfection is not required. *See United States v. Dominguez-Benitez*, 542 U.S. 74, 83 n.9 (2004) ("Just as there are many fair trials but few perfect ones, so flaws are also to be expected in Rule 11 proceedings." (cleaned up)).

receive a sentence of three (3) years if he pleaded guilty, and that no other outcome of his guilty plea was possible." *Id.* **at 2**.

The Government opposes the Motion—arguing that Silva's claim is directly contradicted by the many sworn statements he made at the plea hearing (**Doc. 43 at 1**).

## DISCUSSION

Before Silva's guilty plea was accepted, he could have withdrawn "for any reason" or for "no reason" at all. Fed. R. Crim. P. 11(d)(1). But Magistrate Judge Robbenhaar accepted the plea (**Docs. 21 & 37**). Accordingly, subparagraph (d)(2) is controlling. Prior to sentencing, a defendant may withdraw his plea of guilty plea only if he presents "a fair and just reason." Fed. R. Crim. P. 11(d)(2)(B). The Tenth Circuit adopted seven factors that guide a district court's decision when analyzing such a motion:

> (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether [he] delayed in filing his motion, and if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to [him]; (6) whether [his] plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

*United States v. Dominguez*, 998 F.3d 1094, 1103 (10th Cir. 2021) (Holmes, J.) (brackets in original) (citations omitted).[6] Particular emphasis is paid to factors 1, 5, and 6—because this Court

---

[6] The Government refers to these factors as "the *Black* factors." **Doc. 43 at 5 n.1** (noting that these factors are sometimes referred to as the "*Yazzie* factors" and the "*Gordon* factors"). Upon review, it appears the first Tenth Circuit case to list these seven factors was *United States v. Hickok*, 907 F.2d 983, 985 n.2 (10th Cir. 1990). In *Hickok*, the Tenth Circuit adopted the test for guilty plea withdrawal from the Fifth Circuit's case of *United States v. Carr*, 740 F.2d 339, 333–34 (5th Cir. 1984).

Since *Hickock*, the Tenth Circuit has published opinion after opinion applying these factors. *See, e.g., United States v. Rhodes*, 913 F.2d 839, 845 (10th Cir. 1990); *United States v. Elias*, 937 F.2d 1514, 1520 (10th Cir. 1991); *United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir. 1993); *United States v. Guthrie*, 64 F.3d 1510, 1513 (10th Cir. 1995); *United States v. Carr*, 80 F.3d 413, 420 (10th Cir. 1996); *United States v. Killingsworth*, 117 F.3d 1159, 1161–62 (10th Cir. 1997); *United States v. Graves*, 106 F.3d 342, 343 (10th Cir. 1997); *United States v. Kramer*, 168 F.3d 1196, 1202 (10th Cir. 1999); *United States v. Jones*, 168 F.3d 1217, 1219 (10th Cir. 1999); *United States v. Black*, 201 F.3d 1296, 1299–1300 (10th Cir. 2000); *United States v. Gigley*, 213 F.3d 509, 516 (10th Cir. 2000); *United States v. Siedlik*, 231 F.3d 744, 749 (10th Cir. 2000); *United States v. Sandoval*, 390 F.3d 1294, 1298 (10th Cir. 2004); *United States v.*

"need not address" factors 2–4 and 7 "unless the defendant establishes a fair and just reason for withdrawing." *Hamilton*, 510 F.3d at 1217.

**I. Silva Failed to Assert Innocence**

Turning to the first factor, a defendant may satisfy the assertion-of-innocence factor by asserting a credible argument about his legal innocence. *Marceleno*, 819 F.3d at 1273. Here, the Motion makes no assertion of innocence (**Doc. 41**). But the Reply did (sort of). *See* **Doc. 46 at 1–2** (stating "Surely, Mr. Silva asserts his innocence here and always has."). And Silva also asserted his innocence at the hearing. *See* **Mot. Hrg. Tr. at 10:8–10** (responding "yes," when asked by defense counsel if Silva was "maintaining that you are not guilty?").

To prevail, Silva needed to "make a factual argument that supports a legally cognizable defense." *Hamilton*, 510 F.3d at 1215 n.2. Instead, Silva simply stated he wishes to maintain his innocence. He did not present a credible and legally cognizable defense in his Motion, Reply, or at the hearing. He did not present any facts. And this is fatal—meaning Silva failed to carry his burden as to this first factor. *See United States v. Perez*, 656 F. App'x 406, 408 (10th Cir. 2016) (unpublished).

For starters, his current claim of innocence is contradicted by his previous statements under oath admitting guilt. *Compare* **Mot. Hrg. Tr. at 10:8–10** (maintaining innocence), *with* **Plea Hrg. Tr. at 14:9–10 & 17:6–10** (admitting guilt). More importantly, the "assertion of a defendant's subjective belief in his own innocence does not mandate allowing him to withdraw his plea of guilty." *Hickok*, 907 F.2d at 985 n.2 (citation omitted). Thus, Silva failed to assert his innocence

---

*Yazzie*, 407 F.3d 1139, 1142 (10th Cir. 2005) (en banc); *United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir. 2007); *United States v. Byrum*, 567 F.3d 1255, 1264 (10th Cir. 2009); *United States v. Garcia*, 577 F.3d 1271, 1273–74 (10th Cir. 2009); *United States v. Muhammad*, 747 F.3d 1234, 1241 (10th Cir. 2014); *United States v. Sanchez-Leon*, 764 F.3d 1248, 1258 (10th Cir. 2014); *United States v. Jim*, 786 F.3d 802, 807 n.4 (10th Cir. 2015); *United States v. Marceleno*, 819 F.3d 1267, 1272 (10th Cir. 2016).

in a manner that "defeat[s] the elements in the government's prima facie case or make[s] out a successful affirmative defense." *United States v. Wilcox*, 2022 U.S. App. LEXIS 17289, at *10 (10th Cir. June 23, 2022) (unpublished) (Holmes, J.) (internal citation and quotation omitted); *see also Byrum*, 567 F.3d at 1264–65 (Tymkovich, J.) (same). Despite the Reply and Silva's testimony at the hearing, the Court concludes he did not ***credibly*** assert legal innocence. *See* **Doc. 43 at 6**. As the United States highlights, Silva: (1) "admitted under oath that the United States could prove the elements of the offense at trial," (2) admitted "he was, in fact, guilty of the crime charged," and (3) told the Court "I'm just owning up to you know my crime." ***Ibid.***; *see also* **Plea Hrg. Tr. at 14:9–10**.

This factor weighs against allowing withdrawal.

## II. Silva was Competently Represented by Counsel

The Court next examines factor five, which deals with "the quality of the defendant's assistance of counsel." *Siedlik*, 231 F.3d at 749. Here, Silva had the "benefit of effective assistance of counsel throughout plea bargaining." *Elias*, 937 F.2d at 1520 (affirming district court's denial of defendant's motion to withdraw guilty plea). The plea colloquy with Magistrate Judge Robbenhaar proves that Defendant: (1) understood his constitutional[7] rights, (2) was informed of the nature and penalties[8] of his crime, (3) was aware of the sentencing Guidelines, and (4) was satisfied with his attorney's performance. The following excerpt makes this point clear:

> **THE COURT:** Mr. Silva, do you understand the charge you're pleading guilty to?
>
> **THE DEFENDANT:** Yes.
>
> **THE COURT:** Do you understand the potential penalties?
>
> **THE DEFENDANT:** Yes.

---

[7] *See supra* n.2.
[8] *See supra* nn.3–4.

> **THE COURT:** Mr. Silva, have you discussed the United States Sentencing Guidelines with your attorney?
>
> **THE DEFENDANT:** Yes.
>
> **THE COURT:** Now, it's appropriate for your attorney to give you his best estimate as to what the guidelines would recommend in your case; but ultimately, it's up to the sentencing judge in your case to calculate those guidelines and determine how they may or may not apply. The judge must consider the sentencing guidelines but must consider a number of other factors that are found in a separate statute. And what that means, Mr. Silva, is that the sentencing guidelines are one of a number of factors that must be considered at your sentencing hearing and when calculating your sentence. What it also means is that the sentencing guidelines are not mandatory or binding on the sentencing judge. So the judge could recognize that the guidelines might recommend a particular sentencing guideline range but could decide that you deserve something more or perhaps less than what the guidelines recommend. Do you understand that?
>
> **THE DEFENDANT:** Yes.
>
> **THE COURT:** Do you understand that the guidelines are not mandatory or binding on the sentencing judge?
>
> **THE DEFENDANT:** Yes.
>
> **THE COURT:** And do you feel like you've had enough time to discuss the sentencing guidelines with your attorney?
>
> **THE DEFENDANT:** Yes.
>
> . . . .
>
> **THE COURT:** And finally, are you satisfied with your attorney's advice and representation?
>
> **THE DEFENDANT**: Yes.

**Plea Hrg. Tr. at 9:17–10:25 & 12:3–5**. Despite this colloquy, Silva now alleges that his attorney was deficient—specifically, Silva claims he was "promised" a three-year sentence (**Doc. 41 at 2**).

At the hearing on September 24, 2024, former defense counsel testified. *See* **Mot. Hrg. Tr. at 19:11–31:15**. In light of his testimony, the Court analyzes Silva's allegations in two ways. First,

6

the Court analyzes Silva's motion to withdraw while giving full weight to former defense counsel's testimony. *See infra* ¶ II.A. Then, the Court analyzes Silva's argument assuming former defense counsel stated a three-year custodial sentence was possible (even though that evidence isn't credible). *See infra* ¶ II.B.

### A. Effective assistance

Former defense counsel told the Court about his discussions with Silva—specifically, those related to pleading guilty. **Mot. Hrg. Tr. at 19:11–31:15**. Importantly, former defense counsel denied ever advising Silva that he would receive a three-year sentence. *Id.* **at 22:21–23** (answering "no," when asked if he ever "guaranteed" Silva a sentence of three-years).[9] The United States also admitted two Exhibits into evidence. *See* **Docs. 47-1 & 47-2**. The first was a waiver of attorney-client privilege. The second was former counsel's notes. Those notes[10] categorically show that Silva was never promised a sentence of three years.[11]

---

[9] The Court gives significant weight to former defense counsel's testimony. In one respect, the Court finds former defense counsel more credible than Silva. Secondarily, Silva himself equivocates as to whether the three-year sentence was a promise or just his assumption. And third, absent a Rule 11(c)(1)(C) Plea Agreement to a specific sentence, an experienced criminal defense attorney would never guarantee a specific sentence to a client. *See, e.g., United States v. Rith*, 63 F. App'x 463, 464–65 (10th Cir. 2003) (unpublished) (noting that "counsel's failure to predict the correct guideline sentence" does not permit withdrawal because Defendant "was advised there was no guarantee of any particular sentence"); *United States v. Cicchiello*, Nos. 15-cr-223 & 19-cv-415, 2021 U.S. Dist. LEXIS 45422, at *8 & 17 n.6 (M.D. Pa. Mar. 11, 2021) (crediting defense counsel's testimony that "he never guarantees" a sentence because "it's ultimately up to the judge" (cleaned up)); *United States v. Roddy*, No. 18-cr-99, 2019 U.S. Dist. LEXIS 191137, at *4 (M.D. Fla. Oct. 16, 2019) (finding that defense counsel "stressed to Defendant that . . . there could be no guarantees about the length of the sentence"); *United States v. Plascencia*, Nos. 21-cr-144 & 22-cv-1070, 2024 U.S. Dist. LEXIS 138227, at *16 (W.D. Okla. Aug. 5, 2024) (finding defense counsel's testimony that she "never promised Defendant any particular advisory guideline sentence" was credible).

[10] Former defense counsel calculated three scenarios for sentencing—a worst-case, a middle ground, and a best case. The corresponding Guidelines ranges were: (1) 70–87 months, (2) 57–71 months, or (3) 37–46 months, respectively. *See* **Doc. 47-2**.

[11] In the Court's view, Silva was never promised a three-year sentence. For one, former defense counsel denied ever telling Silva anything of the like.

But, perhaps more importantly, Silva equivocated. On direct examination, Silva testified that he "believe[d]" he would get a sentence of three years. **Mot. Hrg. Tr. at 6:25–7:3**. But then, on cross-examination, Silva admitted that he was not "promised" a sentence of three years—saying it "wasn't a promise," but rather it was just his "assumption." *Id.* **at 14:25–16:9**.

7

Based on this evidence (in conjunction with the plea hearing itself), the Court concludes that Silva's prior counsel provided effective assistance prior to the plea hearing. The same is true of counsel's performance at the plea hearing. Plus, during the Rule 11 colloquy, Silva was properly advised by the Magistrate Judge of all the requisite considerations. *See* **Plea Hrg. Tr. at 6:24–7:17, 8:21–11:11, 18:12–20:5**; Fed. R. Crim. P. 11(b)(1)(H)–(M). There is no doubt in this Court's mind that Silva was properly advised of the advisory nature of the Guidelines—both by former counsel *and* the Magistrate Judge. This factor weighs against him.

### B. Ineffective assistance analysis

Pretend for a minute that former counsel said, "a three-year sentence is possible." Or assume that Silva asked, "what's the least I can get?" and former counsel responded with "somewhere around three years." Even under these "facts,"[12] Silva's Motion would be denied.

According to Tenth Circuit precedent, when a defendant challenges his guilty plea based on ineffective assistance of counsel, the *Strickland v. Washington*, 466 U.S. 668, 687 (1984) test applies. Thus, to prevail, Silva must show *both*: (1) that his counsel's performance was deficient, and (2) this deficiency prejudiced his defense. *See Hamilton*, 510 F.3d at 1216.

In this case, even if Silva's claim that he would have demanded trial but-for the "promise"[13] of a three-year sentence is true, he cannot show deficient performance. That's because an erroneous sentence estimate is not deficient performance. *United States v. Parker*, 720 F.3d 781, 787 n.9

---

[12] The reason the Court uses scare quotes around the word facts is because there are no facts in the record to support this assertion. Former defense counsel, the Magistrate Judge, the transcript, and Silva himself (in January) all support the conclusion that Silva was aware of the sentencing possibilities and was satisfied with counsel.
    Despite any change of heart, misremembering, or wishful thinking, the Court does not view the analysis in ¶ II.B. to be factual—but instead hypothetical (or counter-factual). The facts of what happened, what was said, and what was known are laid out *supra* ¶ II.A. But it's important to show that even under this hypothetical, Silva would not prevail.

[13] Again, the Court notes that Silva was not promised this sentence—but instead assumed that's what he would receive. **Mot. Hrg. Tr. at 14:25–16:9**.

(10th Cir. 2013); *see also United States v. Figueroa-Espinoza*, 2023 U.S. App. LEXIS 8724, at *24 (10th Cir. Apr. 12, 2023) (unpublished) (Holmes, C.J.) ("We have repeatedly[14] held that a miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." (cleaned up)). The misapplication (and/or misapprehension) of the Guidelines here is not a basis for withdrawal of a plea. *See, e.g., Dominguez*, 998 F.3d at 1106–09 (finding a "misunderstanding" about the "potential sentencing exposure" was insufficient); *Hamilton*, 510 F.3d at 1216–17 (same); *Sanchez-Leon*, 764 F.3d at 1259–61 (finding a plea was "knowing and voluntary" even when defendant argued "he did not understand the sentence could exceed 17.5 years"); *Elias*, 937 F.2d at 1520; *Rhodes*, 913 F.2d at 844 (holding a disparity between the anticipated and actual guideline sentences do not create grounds for withdrawal); *see also United States v. Pirpich*, 594 F. App'x 471, 477 (10th Cir. 2014) (unpublished) (finding attorney's alleged estimate of "a sixty-month sentence" was insufficient to withdraw from the plea agreement even though defendant was sentenced to "188 months' imprisonment"). Therefore, even if former defense counsel said, "there's a chance you receive a three-year sentence," that would not be deficient performance. *See supra* n.10 (discussing "best" case scenario).

To show prejudice, Silva must demonstrate that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hamilton*, 510 F.3d at 1216. But

---

[14] *See, e.g., Gordon*, 4 F.3d at 1570; *Gigley*, 213 F.3d at 517 n.3; *United States v. Ruiz*, 854 F. App'x 259, 262 (10th Cir. 2021) (unpublished) (rejecting ineffective-assistance claim based on unexpected increase in Guidelines range); *United States v. Craig*, 733 F. App'x 417, 419 (10th Cir. 2018) (unpublished) (explaining that a "miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel."); *United States v. Garcia*, 630 F. App'x 755, 758 (10th Cir. 2015) (unpublished) (rejecting ineffective-assistance claim based on counsel's incorrect estimate of mandatory maximum and minimum sentences); *United States v. Harrison*, 375 F. App'x 830, 835 (10th Cir. 2010) (unpublished) (rejecting ineffective-assistance claim based on counsel's misrepresentation of the length of a prison sentence the defendant would serve for a guilty plea).

even knowing what we know now, counsel did not err by saying a three-year sentence was possible. Silva's base offense level in the Presentence Report ("PSR") is 26. *See* **Doc. 23 at ¶ 22**. He is criminal history category III. *Id.* **at ¶ 39**. And Silva received a three-level reduction (*id.* **at ¶¶ 30–31**) for acceptance—bringing his actual "best case" total offense level down to 23. Under these parameters, Silva's advisory Guidelines range is 57–71 months. Obviously, that's still a sentence of more than three years. But there is no statutory minimum sentence mandated by Congress applicable to this case, so Defendant is not prevented from requesting that the Court vary downward from the low end of the sentencing guidelines. If former counsel told Silva that a three-year sentence was possible, that was not incorrect—it was just not guaranteed (or perhaps not even likely). But it was not impossible.

What about the do-over aspect? But for counsel's "error" in telling Silva he could receive a sentence below the estimated "best case" scenario, would Silva have pleaded not guilty? The Court uses Silva's own words (back in January) to snuff this argument out.

When asked: "Has anyone made you any promises to get you to plead guilty, whether orally, verbally, or in writing?" **Plea Hrg. Tr. at 16:19–20**, Silva answered: "No." *Id.* **at 16:21**. Magistrate Judge Robbenhaar then told Silva "It's appropriate for your attorney to give you his best estimate . . . but ultimately, it's up to the sentencing judge . . . to calculate those guidelines." **Plea Hrg. Tr. at 10:1–5**. Judge Robbenhaar went on to explain "the judge could . . . decide that you deserve something more or perhaps less than what the guidelines recommend." **Plea Hrg. Tr. at 10:12–17**. Silva had an opportunity to speak up. But he never brought up this "promise" or "assumption." Nor is there any mention of "three years" in the change of plea transcript. All this to say, a criminal defendant's hopes about receiving a sentence below the best-case estimate provided by defense counsel is not grounds for withdrawal. This is true, even when (as here),

10

former defense counsel miscalculated Silva's base offense level. *See* **Doc. 33**; *see also* **Mot. Hrg. Tr. at 24:23–25:7**[15]

This entire subsection is hypothetical and academic. But it hammers home the notion that a criminal defendant can never be 100% sure[16] of the sentence he will receive based off advice of counsel or the PSR alone. (The one exception being a Rule 11(c)(1)(C) plea agreement for a specific sentence). There is almost always some wiggle room for the sentencing court to go above or below the Guidelines. Thus, for Silva's assumption of former counsel's "best case" scenario to have prejudiced Silva, counsel must have never: (1) provided multiple other sentencing scenarios, (2) explained enhancements, and (3) stated that the estimate may be different than the sentencing court's ultimate calculation. This is a bridge too far. Especially when this entire subsection is premised upon Silva's uncorroborated assumptions.[17]

---

[15] Former defense counsel's "worst-case" scenario listed Silva as offense level 28 (before acceptance) and criminal history category III—resulting in an advisory Guidelines sentence of 70–87 months after acceptance of responsibility. *See* **Doc. 47-2**. The PSR lists Silva's base offense level at 26 (**Doc. 23 at ¶ 22**). In the Court's view, former defense counsel's being "off" by one level—prior to enhancements—is not deficient performance. Nor is it prejudicial. This is especially true given that former counsel testified to the fact he discussed enhancements with Silva. **Mot. Hrg. Tr. at 28:1–29:21**. Thus, Silva was informed of the worst-case scenario—but was also aware the worst-case scenario could get worse. And finally, Silva was informed by former defense counsel that the sentencing Judge could sentence above (or below) the advisory Guidelines—meaning there was a possibility that the worst-case estimate could get even worse, still.

[16] *See, e.g., Craig*, 733 F. App'x at 419 (noting that the court "thoroughly explained to [Defendant] in open court that his attorney's Guidelines estimate could be wrong, and that certain factors could dramatically alter his advisory range"); *United States v. Eppinger*, 49 F.3d 1244, 1251 (7th Cir. 1995) (stating that Defendant was "repeatedly warned . . . that her actual sentence would be determined in the pre-sentence report, and until then, no estimates were set in stone."); *United States v. James*, 2024 U.S. App. LEXIS 682, at *5 (5th Cir. Jan. 10, 2024) (unpublished) (finding the district court properly advised Defendant of his "possible sentence"—which was an "estimate[], not guarantee[]"); *United States v. Mariano*, No. 12-cr-061, 2017 U.S. Dist. LEXIS 78237, at *22 (D.R.I. May 23, 2017) (stating defense counsel's "estimate of how much time [Defendant] would serve was hardly carved in stone, and there was no guarantee that he would have received a sentence at the low end of the guideline range even if he had chosen to accept the initial plea offer."); *Martinez v. United States*, Nos. 22-cv-737 & 18-cr-66, 2024 U.S. Dist. LEXIS 84343, at *3 (N.D. Tex. May 9, 2024) (""[N]o one, including [Defendant's] counsel, could predict in advance what his sentence would be.").

[17] Once again, the Court notes that Silva stated he was "assuming 3 years," multiple times on direct examination. Likewise, on cross-examination, Silva admitted that a three-year sentence was his assumption—not a promise.

Silva has proved neither deficient performance nor prejudice. Moreover, Silva presented no evidence to overcome his prior representations made under oath (nor those of former counsel). At bottom, the Court does not find there was any promise of a three-year sentence—but even if the *possibility* of a three-year sentence was discussed (and/or assumed by Silva), that would not constitute a "fair and just reason" for withdrawal. In so concluding, the Court relies heavily on Silva's prior statements under oath as well as his contradictions as the motion hearing. This (alternative) factor also weighs against granting his motion to withdraw.

**III. Silva Entered His Plea Knowingly and Voluntarily**

Next, Silva argues "that he just answered the questions in the manner he thought would allow the plea to proceed." **Doc. 41 at 2**. According to Silva, he wanted "the plea to proceed" so that he would receive a three-year sentence. *Id.*; *see also supra* ¶ II.A.–II.B. But even if Silva did not correctly anticipate his advisory Guidelines sentence range, that alone is not a sufficient reason for withdrawing from his plea. The Rule 11 colloquy leaves little doubt in this Court's mind that Silva's plea was knowing and voluntary. *See Gordon*, 4 F.3d at 1573.

Let's look to Silva's own statements. When asked: "Has anyone made you any promises to get you to plead guilty, whether orally, verbally, or in writing?" **Plea Hrg. Tr. at 16:19–20**, Silva answered: "No." *Id.* **at 16:21**. Essentially, Silva argues that he lied under oath—and somehow that means the Court should believe him now. This is not a winning argument. Rather, "the only reasonable conclusion that this record supports is that [Silva] had been advised of counsel's best estimate of what the court would actually impose, and [Silva] was interpreting counsel's estimate as a 'promise' as to the sentence he was going to receive." *United States v. Powell*, 269 F.3d 175, 182 (3d Cir. 2001) (quoting *United States v. Mustafa*, 238 F.3d 485, 491–92 (3d Cir. 2001)).

12

Silva testified that: (1) he thought the result of the plea would be three years, but then (2) "I got the PSR and it was totally different." **Mot. Hrg. Tr. at 18:10–16**. But the evidence shows—or at least suggests—Silva's desire to get out of his guilty plea predates the issuance of his PSR. In fact, his desire to replace his then-defense counsel occurred in February 2024—a month before the PSR was filed. *See* **Doc. 47-2**. It follows, then, that Silva's desire to withdraw from his guilty plea manifested at the same time—also prior to the issuance of the PSR. On this point, former counsel's notes seem to show that Silva regretted pleading guilty before the PSR was ever filed. *See* **Doc. 47-2 at 3**. Thus, Silva's discontent is not actually rooted in any sentence-related issue, as alleged. Rather, it's simply buyer's remorse.

As the Government points out: "Any claim [Silva] may now make that his guilty plea was not knowing and voluntary [is] belied by the record." **Doc. 43 at 8**. The Court agrees. During the plea colloquy, Silva agreed that he: (1) understood the possible penalties, (2) understood the Guidelines were not mandatory, (3) had enough time to discuss the sentencing Guidelines with his attorney, and (4) was satisfied with his attorney. **Plea Hrg. Tr. at 9:17–10:25 & 12:3–5**. The truth of these statements "should be regarded as conclusive in the absence of a believable, valid reason justifying a departure from the apparent truth of his Rule 11 statements." *Hedman v. United States*, 527 F.2d 20, 22 (10th Cir. 1975) (per curiam). In fact, the Magistrate Judge made the following finding:

> **THE COURT:** All right. Mr. Silva, I find that you are competent and capable of entering an informed plea; that you're aware of the nature of the charge against you and the consequences of your plea, and that your plea is knowing and voluntary and supported by sufficient facts. I therefore accept your plea and now adjudge you guilty.

**Plea Hrg. Tr. at 17:11–17**. This plea colloquy was thorough and complied with Rule 11—and it "carr[ies] a strong presumption of verity." *Dominguez*, 998 F.3d at 1106 (citations omitted).

13

Finally, the Court concludes Silva was informed of numerous possible sentencing outcomes. *See* **Doc. 47-2**; *see also supra* n.10. And these estimates were communicated to Silva ***prior*** to his pleading guilty. **Mot. Hrg. Tr. at 22:12–20**. Silva also knew that enhancements may come into play (even if he hoped otherwise). *Id.* **at 28:1–29:21**. With Silva's criminal history, the PSR and/or sentencing court would have needed to find his total offense level to be 18 for a within-Guidelines sentence of three-years to be in play. (An offense level of 18 and criminal history III results in an advisory Guidelines range of 30–41 months). But this is below even the best-case scenario provided by former counsel. **Doc. 47-2**. And well below each of his other estimates. ***Ibid.*** Despite his assumptions (or wishful thinking), the Court finds that Silva was properly informed when he pleaded guilty. His plea was knowing and voluntary.

This factor weighs against permitting withdrawal.[18]

\* \* \*

Because Silva has not presented a fair and just reason permitting withdrawal of his guilty plea, the Court need not address the remaining factors. *See Sanchez-Leon*, 764 F.3d at 1258; *Marceleno*, 819 F.3d at 1272 ("If the assertion-of-innocence, knowing-and-voluntary, and ineffective-assistance-of-counsel factors all weigh against the defendant, a district court need not consider the remaining four factors.").

Even though the Court "need not" address the remaining factors, the Court does so anyway.

**IV. Other Factors**

As explained below, the remaining four factors also tilt against Silva.

---

[18] *See, e.g.*, *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005) ("[S]tanding alone, an attorney's erroneous sentence estimate does not render a plea involuntary."); *United States v. Kuhn*, 554 F. App'x 719, 720 (10th Cir. 2014) ("[E]rroneous guideline predictions by counsel do not make a plea unknowing or involuntary."); *United States v. Bridges*, 68 F. App'x 896, 900 (10th Cir. 2003) (finding plea voluntary; prediction of no more than 60 months, sentence of 175 months); *see also Wellnitz v. Page*, 420 F.2d 935, 936 (10th Cir. 1970) (finding plea voluntary; prediction of 25 years, sentence of 100 years).

14

### *A. Prejudice to the government*

When Silva filed the motion to withdraw his plea, the PSR had already been issued (**Doc. 23**). Objections and Responses were filed (**Docs. 25, 28, 29**). Addenda to the PSR were filed (**Docs. 30 & 38**). And sentencing was docketed for September 9th (**Doc. 40**). This case was ready for sentencing.

Then, two months after the sentencing was docketed, Silva moved to withdraw his plea.

Allowing Silva to withdraw his guilty plea would prejudice the Government in several ways. The Government would have to: (1) draft and argue motions, (2) expend resources issuing subpoenas, and (3) disrupt work on active cases in order to revisit this case. *See* **Doc. 43 at 12–13**. The prejudice here is legitimate. Permitting Silva's withdrawal here would require "the government to prepare and try anew a case it had substantially completed." *United States v. Graham*, 466 F.3d 1234, 1238 (10th Cir. 2006).

### *B. Delay in filing*

Silva waited nearly seven months before filing his motion. *Compare* **Doc. 21** (filed on January 29, 2024), *with* **Doc. 41** (filed on August 20, 2024). Such a length delay weighs against granting the withdrawal motion.

Now, to be fair, new defense counsel was not appointed until April 25, 2024 (**Doc. 35**). So, Silva may not have had the full benefit of his counsel for part of the period of delay. Nevertheless, four months elapsed from the time current defense counsel took over representation until the motion was filed. And four months is still a significant delay. *See Graham*, 466 F.3d at 1238 (characterizing a two-month delay as "lengthy"); *see also United States v. Sparks*, 353 F. App'x 121, 126 (10th Cir. 2009) (unpublished) ("[A] four-month delay militates against granting a motion to withdraw.").

15

This delay weighs against granting Silva's motion.

### C. Inconvenience to the Court

As with the prejudice to the Government factor, some degree of inconvenience to the Court is inevitable. This factor is not (meaningfully) disputed. Setting aside time for a trial instead of a sentencing is an obvious inconvenience. At the same time, this is not a month-long trial. Nor is it complex. Nor are there dozens of witnesses. To the extent this Court is inconvenienced, it is not massively inconvenienced. Even so, the Court's docket will be disrupted. And this is an inconvenience. *Cf. United States v. Gauger*, 534 F. App'x 758, 761 (10th Cir. 2013) (unpublished) (stating that even a two-day trial is inconvenient). This factor weighs, slightly, against Silva.

### D. Waste of judicial resources

Again, some degree of waste is unavoidable. Even when there "does not appear to be an inordinate waste," this consequence still weighs against a defendant. *See Carr*, 80 F.3d at 421. This factor, like the previous, weighs—albeit only slightly—against Silva. *See Hamilton*, 510 F.3d at 1217 n.4 ("A plea withdrawal inevitably results in some . . . waste of judicial resources.").

\* \* \*

Each and every factor weighs against Silva. He has failed to show that withdrawal is "fair and just." Quite unquestionably, the record indicates Silva was satisfied with his attorney at the time of the plea hearing. He knew the nature of the charge and the consequences of his plea. And his plea of guilty was knowing and voluntary. *See generally* **Plea Hrg. Tr.**

Guilty pleas should not be set aside lightly. And although the "fair and just" standard is a liberal one, it does not create an automatic right to withdraw. *Siedlik*, 231 F.3d at 748. Regret does not merit granting a motion to withdraw a guilty plea. *See Dominguez*, 998 F.3d at 1117 (withdrawing "to strike a better deal" is disallowed); *see also United States v. Foy*, 617 F.3d 1029,

1035 (8th Cir. 2010) (rejecting argument that withdrawal is appropriate "because [defendant] regretting pleading without a plea agreement").

## CONCLUSION

The Court concludes that Silva has failed to demonstrate a fair and just reason for withdrawal from his guilty plea. His Motion (**Doc. 41**) is, therefore, **DENIED**.

**IT IS SO ORDERED.**

/s/
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE